**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDREW LANCASTER, JEFFERY MILLS,
DEXTER WILLIAMS, WILLIAM DENNIS,
STEVE LIVADITIS, JIMMY VAN PELT,
H. LEE HEISHMAN III AND JOHNATON
GEORGE,

    Plaintiffs,

  v.

MATTHEW CATE, Acting Secretary,
California Department of Corrections and
Rehabilitation, and ROBERT L. AYERS, JR.,
Acting Warden, San Quentin State Prison,

    Defendants.
                                       /

No. C 79-01630 WHA

**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

## INTRODUCTION

In this decades-old prison litigation, plaintiffs are Death Row inmates incarcerated in San Quentin State Prison, and defendants are Matthew Cate, Secretary of the California Department of Corrections, and Robert Ayers, the warden of the prison. Plaintiffs now bring a motion for attorney's fees, claiming that defendants should be ordered to pay fees in the amount of $435,533.90, and costs in the amount of $29,228.28, for the period from January 1, 2007, through February 15, 2008. For the reasons stated below, the motion for attorney's fees is **GRANTED.** This order provides the general ruling for determining entitlement and calculation of attorney's fees; the actual amount will be determined by special master if the amount cannot be agreed upon.

**STATEMENT**

In 1979, Death Row inmates at San Quentin State Prison filed suit against prison officials for allegedly imposing unconstitutional conditions upon prisoners. The next year, plaintiffs and defendants entered into a broad consent decree governing prison conditions. Although the consent decree was largely ignored for two decades, it was defendants' own voluntary acquiescence in a broad consent decree that cuts a large figure in resolving this motion. Since reassignment to the undersigned, the case has become active with the parties' efforts to modify, enforce, and terminate the consent decree. A more detailed discussion of the lengthy and convoluted procedural history can be found in previous orders. In the instant action, the parties dispute the fees and costs due to plaintiffs' counsel between January 1, 2007, and February 15, 2008.

In January 2007, an order was issued outlining the procedures necessary to obtain attorney's fees (Dkt. No. 998). The order stated, *inter alia*, that any motion for attorney's fees must be on a six-month basis and be accompanied by detailed declarations and organized by discrete projects. Since that time, there have been three stipulations for attorney's fees.

Plaintiffs moved to enforce and to modify the consent decree in April 2007. This was *before* defendants moved to terminate certain or all provisions of the consent decree. The Court therefore had before it a situation where a consent decree was already in place, the provisions of which may or may not have exceeded what was constitutionally required. But because defendants had not yet moved to terminate, they were still under the obligation to abide by it.

Two months later, an order concluded that the entire consent decree would be enforced (Dkt. No. 1142). According to that order, plaintiffs had proven by clear and convincing evidence that defendants had violated the consent decree with respect to the following provisions: clothing, meals and hot carts, Adjustment Center individual exercise yards, East Block Grade A individual exercise yards, East Block Grade B individual exercise yards, East Block Grade A group exercise yards, East Block Grade B group exercise yards, equipment and yard showers, interruption of access to exercise yards, hobbycraft, high school education, visitation, contents of showers, staff screening, group religious services, and tier telephones.

1  Defendants were ordered to create a detailed plan to cure these violations by September 2007.
2  Claims regarding other provisions needed an evidentiary hearing for further factual
3  development: rodents and vermin, cleaning supplies, laundry, noise, adequacy of Grade A
4  individual exercise yards, adequacy of Grade A group exercise yards, raincoats, and access to
5  legal materials. With respect to general sanitation, food sanitation, yard closures, classification,
6  and alleged equal protection violations, the order found that plaintiffs had failed to provide clear
7  and convincing evidence of any violations.[1]

8  The second component of the order addressed plaintiffs' motion to modify the existing
9  consent decree. Ruling was deferred on this motion because the order found that more factual
10 inquiry was necessary to determine the severity of problems relating to general sanitation,
11 the failure of defendants to provide adequate linens and towels, and whether defendants had
12 possessed a culpable state of mind. The motion to modify has never been ruled upon.

13 The June 2007 order provoked defendants' motion to terminate the consent decree.
14 According to the Prison Litigation Reform Act, courts cannot grant or approve relief that binds
15 prison administrators to do more than the constitutional minimum. Any prospective relief that
16 exceeds the constitutional minimum must — upon motion — be terminated, regardless of when
17 it was granted. 18 U.S.C. 3626(b).

18 Following a hearing on defendants' motion, an order dated December 21, 2007,
19 terminated the following provisions: meals and hot carts, hobbycraft, high school education,
20 classification, staff screening, interruption of access to exercise yards, weight benches,
21 jump ropes, ping pong tables, yard showers, clothing, number of tier showers, contents of
22 showers, and group religious services. The order also found no equal protection violations and
23 deferred ruling on a number of other provisions because an evidentiary hearing was required
24 (Dkt. No. 1324).

25 Some provisions deserved an evidentiary hearing and the evidentiary hearing began in
26 mid-January 2008 and lasted over a week. Over thirty witnesses testified. The undersigned and

---

[1] The June 2007 order referred to "general sanitation" problems. In the ensuing proceedings relating to defendants' motion to terminate the consent decree, the Court became more specific. It addressed the provisions on cleaning supplies, rodents and vermin, and the maintenance of showers.

3

1  his staff visited San Quentin for inmate testimony and to view the premises. After the view and
2  further oral argument, the second installment to the termination order was issued in February
3  2008 (Dkt. No. 1493). The order terminated provisions relating to visitation, tier telephones,
4  access to legal materials, outdoor exercise, raincoats, and laundry. The provisions having to do
5  with noise, cleaning supplies, rodents and vermin, and the maintenance of showers, however,
6  were not terminated. In sum, only four of the contested consent-decree provisions remained
7  following the end of these proceedings. These provisions were the most contested.

8  Plaintiffs now seek $435,533.90 in attorney's fees and $29,228.28 in costs (for a total of
9  $464,762.18). Plaintiffs say that the disputed fees in 2007 through early 2008 have been
10 incurred by: (i) taking discovery and investigating prison conditions; (ii) drafting motions to
11 enforce and modify the consent decree; and (iii) opposing defendants' motion to terminate the
12 consent decree. Counsel for both parties have met and conferred to resolve the fee dispute.
13 The requested fees and costs do *not* include the $97,059.91 that defendants have already agreed
14 to pay. In sum, plaintiffs request a grand total of $560.483.11.[2]

15 The breakdown is as follows. From January 1, 2007, through June 30, 2007,
16 plaintiffs allegedly incurred $47,635.75 in fees and $12,490.65 in costs, which covered the
17 work performed to modify and enforce the terms of the consent decree. Based on this work,
18 the June 2007 order found numerous violations of the consent decree. From July 1, 2008,
19 through February 15, 2008, they claim $376,207.75 in fees, $11,690.40 for fees on fees,
20 and $16,737.63 in costs. These amounts were related to efforts to enforce the consent decree,
21 prepare for the modification evidentiary hearing (which was vacated when defendants moved to
22 terminate), and then prepare for the termination evidentiary hearing.

---

[2] In their moving papers, plaintiffs say that the total amount of undisputed fees was $97,059.51. They cite to the joint stipulation and proposed order for payment of undisputed fees and costs and reservation of rights with respect to disputed fees and costs (Dkt. No. 1518). Defendants, on the other hand, say in their opposition memorandum that they have agreed to pay $95,720.93 (Opp. 2). The former amount is the correct one. *See* Dkt. No. 1518 at 2:14–15; at 3:1–2.

4

## ANALYSIS

**1.    PREVAILING PARTY STATUS.**

The statutory source of attorney's fees in this action is Section 1988. According to this provision, "In any action or proceeding to enforce a provision of [Section 1983], the court, in its discretion, *may* allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. 1988 (emphasis added). A district court therefore has the discretion to award reasonable attorney's fees to a prevailing party — this being the fundamental point from which our analysis begins.

Both parties dispute as to who was the prevailing party. Neither side disputes, however, that prevailing-party status is conferred by a change in the legal relationship between plaintiffs and defendants. In *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health and Human Resources*, 532 U.S. 598, 604 (2001), the Supreme Court clarified the meaning of "prevailing party" with respect to a consent decree:

> [S]ettlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees. Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered "chang[e][in] the legal relationship between [the plaintiff] and the defendant." These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees.

Under Supreme Court and circuit authority, the change in the legal relationship therefore occurs with the entry of a consent decree. Because plaintiffs obtained the consent decree in 1980, they are deemed the prevailing party.[3]

The PLRA limits the amount to award under Section 1988. According to 42 U.S.C. 1997e(d)(1):

> In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are

---

[3] *See also Gates v. Gomez*, 60 F.3d 525, 534 (9th Cir. 1995) ("[Defendants] urge us to apply a prevailing party standard under 42 U.S.C. § 1988 to post-judgment monitoring and compliance work under the consent decree. But plaintiffs have already met the section 1988 prevailing party standard with the entry of the consent decree"); *Keith v. Volpe*, 833 F.2d 850, 857 (9th Cir. 1987) (holding that post-judgment monitoring of the consent decree was a necessary aspect of plaintiffs' prevailing in the case, so plaintiffs therefore satisfied the § 1988 prevailing party requirement); and *Webb v. Ada County*, 285 F.3d 829 (9th Cir. 2002).

5

>authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that —
>
>(A) [T]he fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>
>(B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
>(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

Contrary to plaintiffs, this provision does not override a district court's discretion under Section 1988 and require a district court to order all fees enumerated. A district court still retains the discretion to order fees to a lesser extent than what is set forth in Section 1997e. Nonetheless, given the facts and circumstances in this case, the Court will grant all fees within limits of Section 1997e.

This order emphasizes that defendants agreed to the provisions of the consent decree in 1980. Defendants have nobody to blame but themselves for having agreed to abide by the broad provisions of the consent decree. All of the work plaintiffs' counsel have done (in the instant action) has been in enforcing and defending the same consent decree put in place by defendants. This includes plaintiffs' efforts in opposing defendants' motion to terminate the consent decree — even though defendants succeeded in terminating most of the consent decree provisions at issue.

The Eighth Circuit's decision in *Cody v. Hillard*, 304 F.3d 767, 773 (8th Cir. 2002), is illustrative. There, a class of state prisoners brought a Section 1983 action against state prison officials for constitutional violations. After the district court held that numerous prison conditions were unconstitutional, the parties entered into a consent decree. The Eighth Circuit affirmed the district court's decision to grant plaintiffs attorney's fees. The court of appeals reasoned that the class had obtained a court-ordered consent decree that governed prison conditions. "This was clearly a 'judicially sanctioned change' in the parties' relationship that conferred prevailing party status on the class under *Buckhannon*." *Cody*, 304 F.3d at 773. The Eighth Circuit also rejected defendants' argument that plaintiffs were not entitled to fees

6

because they had *lost* the motion to terminate.  "[W]ork done to defend a remedy for a constitutional violation is inextricably intertwined with the litigation that yielded that remedy. The fact that plaintiffs did not prevail before the district court in this phase of litigation does not deprive them of fees.  When a remedial consent decree is threatened, 'plaintiffs' counsel [are] under clear obligation to make the defensive effort.'  We have also held that as long as a plaintiff's litigation to protect a remedy does not rise to the level of overkill, 'even largely unsuccessful defensive efforts may be compensable.'" *Id.* at 774–75.

Plaintiffs were under an obligation to enforce the consent decree.  Their counsel worked hard to do so.  This order therefore holds that work done by counsel to enforce, modify, and defend the consent decree was directly incurred in enforcing the relief ordered for the violation. Whether or not it was "reasonably" incurred will be a matter for the special master.[4]

Defendants argue that the PLRA requires a proportionate reduction of fees and costs. Not so.  "Enforcement work under subsection (B)(ii) is not governed by subsection (B)(i) (which is connected to (B)(ii) by an 'or'), so the PLRA does not require courts to reduce fees for enforcing relief in proportion to the relative success of the claims the plaintiff originally asserted."  *Cody*, 304 F.3d at 776 n. 4.  Rather, Sections 1988 and 1997e(d)(1) together allow plaintiffs to collect all fees "directly and reasonably incurred."  Defendants do not cite any post-PLRA decisions holding otherwise.

---

[4] The decisions cited by defendants do not support their arguments.  In *Johnson v. Daley*, 339 F.3d 582, 586 (7th Cir. 2003), the Seventh Circuit stated that there was no "fundamental right to have one's adversary, or the public treasury, defray all or part of the cost of litigation."  The main issue in *Johnson*, however, was whether the PLRA's limits on attorney-fee shifting violated the due process clause of the Fifth Amendment.  Defendants' cited portion came from the Seventh Circuit's discussion that the limits did not affect a fundamental right (because there was no fundamental right in attorney's fees) and that prisoners did not constitute a suspect class.  Consequently, rational-basis review of the PLRA attorney-fee shifting provisions was proper.  In the instant action, plaintiffs are not disputing the constitutionality of these fee limits, so *Johnson* is inapplicable.

In *Farrar v. Hobby*, 506 U.S. 103, 115 (1992), the Supreme Court stated that "fee awards under § 1988 were never intended to 'produce windfalls to attorneys.'"  This decision also does not apply.  In *Farrar*, the Supreme Court held that a civil-rights plaintiff who obtained only a nominal damages award of one dollar on a claim for 17 million dollars in compensatory damages was not entitled to any attorney's fees under Section 1988, even though he technically qualified as a "prevailing party."  *Ibid.*  These fees were also purportedly earned for work performed by attorneys to obtain judgment.  In the instant action, the magnitude of relief obtained was not nominal; a consent decree was entered between the two parties.  In addition, the fees requested were related to work done for post-judgment enforcement of the consent decree.

7

If the consent decree had not already existed and we had arrived at a state of rulings in which plaintiffs had only proven four constitutional violations, then plaintiffs would be entitled to much less in attorney's fees. But that is not the actual scenario. Defendants completely acquiesced in a broad consent decree, thereby conferring prevailing party status upon plaintiffs.

This order recognizes that counsel should not be given a blank check to be compensated for anything and everything. A district court has the discretion under Section 1988 to limit fees. In the instant action, however, given the circumstances, the Court exercises its discretion to award up to the full amount authorized by Section 1997e(d)(1).

### 2. FEES ON FEES.

Plaintiffs also ask for "reasonable fees on fees" for the period from January 1, 2007, through June 30, 2007. These amounts were incurred for two activities — *first*, for meeting and conferring on the payment of fees incurred from January 1, 1999, through December 31, 2006, and *second*, for preparing a motion for fees incurred during that date (including categorizing plaintiffs' billing statements by project as required by order). *See Hernandez v. Kalinowski*, 146 F.3d 196, 199–201 (3d Cir. 1998) ("General rules of statutory construction support reading the PLRA to provide for 'fees on fees'").

Defendants say that plaintiffs should not be entitled to fees on fees unless the Court determines plaintiffs should receive a greater fee award than what defendants have already agreed to. Here, in light of the highly contested nature of attorney's fees, it was reasonable that plaintiffs would have to expend some time and effort to prepare a motion in compliance with the January 2007 "order re procedure for attorney's fees." Plaintiffs are entitled to fees on fees relating to work done to enforce, modify, and oppose termination of the consent decree.

## CONCLUSION

Plaintiffs were the prevailing party and entitled to all fees directly and reasonably incurred in enforcing the consent decree. The motion for attorney's fees and costs is therefore **GRANTED**. They are reminded, however, that while this order finds that the fees were *directly* incurred, it is plaintiffs' burden to show that the fees were *reasonably* incurred. Pursuant to the "order re procedure for attorney's fees" (Dkt. No. 998), the parties have submitted detailed

1  declarations, organized by discrete projects, supporting their claimed amounts of fees and costs.
2  They have also met and conferred in July 2007 and March 2008 to resolve their differences as
3  to the amount.

4        This order has given the basic ruling in how to determine attorney's fees.  The parties
5  should therefore meet and confer on the amount of attorney's fees, in light of this order.  If no
6  agreement has been reached **WITHIN 14 CALENDAR DAYS** of the filing of this order, a special
7  master shall be appointed.  If the parties cannot agree on a special master, then the Court shall
8  select one.  The parties must so advise the Court on this **WITHIN 28 CALENDAR DAYS** of the
9  filing of this order.

10        The special master shall have all the powers set forth in FRCP 53(c) and FRCP
11  54(d)(2)(D).  The parties shall provide the special master with copies of all motion papers and
12  other documents relevant to this dispute.  The special master shall review the briefs and
13  declarations by the parties on the pending motion, hear argument, and then determine a
14  reasonable amount to award, including any fees on fees.  The special master shall also
15  determine the extent to which any discovery should be permitted — with the caution that further
16  discovery should be the exception and not the rule.  The special master shall then prepare and
17  file a report on recommended findings and amount.

18        Absent any supplementation allowed by the special master, the foregoing submissions
19  (together with the briefs already filed) shall be the entire record for the motion.  There will be
20  no replies unless allowed later by the special master.  Any further submissions for the special
21  master's use should not be filed with the Court.  If objections are later made to the special
22  master's report, the objecting party must file a declaration submitting to the Court a complete
23  appendix of relevant communications with the special master.

24        The Court will allocate the fees of the special master in a fair and reasonable manner,
25  taking into account the reasonableness of the parties' respective positions and the special
26  master's recommendation in this regard.  If the movant must pay, then the special master's
27  compensation shall be deducted from the attorney's fee award.  If the opposing party must pay
28  the special master, then it shall pay the special master and pay the award.  The Court will,

9

however, reserve final judgment on allocation of the expense of the special master until a final determination of the fee issue. A final award shall then be entered.

Costs will be determined in strict compliance with the local rules. If a review is sought regarding taxable costs, then the issue may also be referred to a special master (or may not).

**IT IS SO ORDERED.**

Dated: July 14, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE